UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ALFONZO FAULK,                                              :
                                        Plaintiff,          :
                                                            :   08 Civ. 01668 (LGS)
                -against-                                   :
                                                            :   OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF                                 :
CORRECTIONS, *et al.*,                                      :
                                        Defendants.         :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

    Plaintiff Alfonso Faulk brings this action pro se pursuant to 42 U.S.C. § 1983 against the City of New York and Warden Shaw, as well as various corrections officers, legal coordinators and medical personnel, for violations of his constitutional rights while incarcerated at the Manhattan Detention Complex and the George R. Vierno Center in 2007. Plaintiff asserts claims of conspiracy; deliberate indifference to his medical needs; excessive force; violation of a right of access to the courts; supervisory liability; and municipal liability. Defendants City of New York, Warden Shaw, Correction Officer Madan, Correction Officer Pringles, Correction Officer Reyes, Legal Coordinator Jenkins, Doctor Barnes, Doctor Guzman and Physician Assistant Swanzi (collectively "Defendants") move for summary judgment dismissing Plaintiff's complaint in its entirety ("Motion"). For the reasons discussed below, Defendants' Motion is granted.

**I.    Background**

    **A.  Procedural Background**

    Plaintiff filed his complaint in this action on February 20, 2008. Plaintiff amended his complaint on May 30, 2008 and again on April 7, 2009.

1

1. **Dismissal of Certain Defendants**

On August 16, 2012, Magistrate Judge Michael Dolinger issued a Report and Recommendation ("R&R"), recommending that the Court grant Plaintiff a 30-day extension to properly serve defendants Abrams, Bannister, Battles, Davis, Griswald, Henry and Ocasio, for all of whom previous service had been improper. The R&R also recommended that the Court direct Plaintiff to provide additional identifying information as to defendant Jean within 10 days and that the claims against Jean be dismissed if he remained unidentified within an additional 30 days. Additionally, the R&R recommended that the claims against defendants Butler and Etere be dismissed without prejudice due to failure of proper service after multiple extensions.

On September 13, 2012, Judge George Daniels issued an Order adopting each of these recommendations, with the variance of granting Plaintiff a 60-day extension to properly serve defendants Abrams, Bannister, Battles, Davis, Griswald, Henry and Ocasio. To date, Plaintiff has not filed proof of service with the Court as to these seven defendants or as to defendant Jean. Accordingly, the claims against defendants Abrams, Bannister, Battles, Davis, Griswald, Henry, Ocasio and Jean are hereby dismissed without prejudice under Rule of Civil Procedure 4(m). This narrows the defendants in this case to only those whose Motion is currently before the Court.

2. **Summary Judgment Motion**

Defendants timely filed their Motion on June 18, 2013. Plaintiff's opposition was due July 9, 2013. On July 17, 2013, Defendants requested that the Court declare their Motion fully briefed, as Plaintiff had failed to file any opposition. At this time, the Court enlarged Plaintiff's deadline to file his opposition to August 28, 2013 and ordered that the Motion would be declared fully briefed if Plaintiff had not filed any opposition by that date. On July 22, 2013, Plaintiff wrote to the court, saying, "I write to apologize for my lateness to answer the defendants' motion

2

for summary judgment, due to an emergency in my family" and requesting a 14-day extension. At this time, the Court referred Plaintiff to its July 17, 2013 Order, reiterating that Plaintiff had until August 28, 2013 to file his opposition. Copies of each of these orders were mailed to Plaintiff. Plaintiff did not ever file any opposition to Defendants' Motion.

### B. Factual Background

The facts are taken from Defendants' 56.1 Statement, Plaintiff's deposition on the record and Plaintiff's Second Amended Complaint ("SAC") and, as is required on this Motion, construed in the light most favorable to Plaintiff, the non-moving party.

From February 8, 2007 through August 8, 2007, Plaintiff was incarcerated at the Manhattan Detention Complex. On May 30, 2007, C.O. Pringles and two other correction officers issued Plaintiff a disciplinary ticket. That same day, after an investigation, a captain in the prison voided the ticket.

On May 31, 2007, Plaintiff was attacked by other inmates, sustaining injuries to his neck, jaw, mouth, eyes, and knees. "An hour or two" after the assault, Plaintiff was seen by Dr. Barnes. Dr. Barnes sent Plaintiff to the dentist to address the injuries to Plaintiff's mouth and jaw. Dr. Barnes requested that Plaintiff sign an "injury report," but Plaintiff refused because, while the report documented some of Plaintiff's injuries, it excluded the injuries to his knees, among others. Dr. Barnes told Plaintiff that he could not treat him for his knee injuries until the next day, and Plaintiff would have to show up for "sick call" to have these injuries treated. Plaintiff showed up for sick call the next day, and his knees were cleaned and bandaged.

On July 24, 2007, Plaintiff was scheduled to go on a "medical trip" for surgery on his eye due to an infection. Plaintiff, at this time, was housed in an area for high-security inmates. Before escorting Plaintiff on his medical trip, C.O. Madan instructed other officers in the prison to "put maximum restraints" on Plaintiff. Plaintiff refused to wear the restraints "because of

3

[his] shoulder injury," which he claimed would have caused him "a lot of pain" while wearing the restraints. C.O. Madan told Plaintiff that his refusal to wear the restraints meant that he could not go on the medical trip. Plaintiff was given the opportunity to change his mind regarding the restraints, but he still refused to wear them, so he was not taken on his medical trip that day. Plaintiff obtained the eye surgery he needed after being transferred to Livingston Correction Facility on November 28, 2007.

On July 26, 2007, Plaintiff was entering his cell, and C.O. Madan was operating the automatic metal doors, which closed on Plaintiff's hand. Plaintiff's hand and wrist became swollen as a result of this incident, and Plaintiff received x-rays, showing that no bones were broken. Plaintiff believes that C.O. Madan closed the door on his hand purposefully due to her "attitude" toward Plaintiff.

On August 7, 2007, for about three hours, C.O. Pringles denied Plaintiff access to his cell to use the bathroom. At this time, Plaintiff claimed that he was experiencing "complications from a previous surgery for urethra stricture," so that holding in his urine caused him pain. After three hours, Plaintiff passed out, fell and was taken to the emergency clinic. After Plaintiff urinated, his pain subsided.

From August 8, 2007 through November 8, 2007, Plaintiff was incarcerated at the George R. Vierno Center. From August 29, 2007 through August 31, 2007, Plaintiff had a gash on his gums, causing them to bleed, as well as pain in his knees, back, and right shoulder. During this same time period, Plaintiff attempted to receive medical treatment for his injuries and pain from P.A. Swanzi, but was unsuccessful.

In August of 2007, Plaintiff sought to have a motion notarized at the George R. Vierno Center's law library for one of his criminal proceedings. Plaintiff was represented by counsel in this proceeding until around September 17, 2007. On August 29, 2007, Legal Coordinator Ms.

4

Jenkins returned Plaintiff's motion, which was not notarized. Ms. Jenkins also wrote Plaintiff a note, which was attached to the motion and explained that she could not notarize the motion due to incomplete information provided by Plaintiff. On August 31, 2007, Ms. Jenkins sent a second note to Plaintiff, explaining why she could not copy or notarize Plaintiff's motion, specifically, that Plaintiff needed to add his aliases to the motion. Plaintiff believes he was eventually able to file his motion.

On October 10, 2007, C.O. Reyes "sent an unidentified officer" to bring some legal documents to Plaintiff's cell, which Plaintiff had requested on September 27, 2007. All of these legal documents were redacted or "wiped out," and on some of the documents only the name of the motion was visible to Plaintiff.

On October 3, 2007, October 12, 2007 and October 27, 2007, Plaintiff spoke to Warden Shaw about being denied access to the law library. Plaintiff also had conversations with Warden Shaw about his concerns regarding his medical treatment.

On November 23, 2007, Dr. Guzman prescribed Plaintiff the medication Bactrim, but did not inform Plaintiff of this prescription or that Plaintiff had been infected with MRSA. Plaintiff was handed the Bactrim prescription when he was picking up some other medical supplies at the prison pharmacy on November 24, 2007. On November 25, 2007, Plaintiff was informed that he was infected with MRSA when he attempted to return the Bactrim to the pharmacy, assuming it was not his.

On November 28, 2007, Plaintiff was transferred to Livingston Correction Facility.

## II.     Legal Standard

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).

If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See, e.g.*, *Celotex,* 477 U.S. at 322-23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact. *See, e.g.*, *id.* at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). The non-moving party cannot "rely merely on allegations or denials" of the factual assertions of the moving party. Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001). Moreover, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

6

The non-moving party must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. *See*, *e.g., Celotex,* 477 U.S. at 324; *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Furthermore, to demonstrate a genuine dispute as to the material facts, the non-moving party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in his favor. *See, e.g.*, *Anderson*, 477 U.S. at 242, 248; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

"Although pro se plaintiffs are entitled to special latitude, when defending against summary judgment motions, absent a showing of concrete evidence from which a reasonable juror could return a verdict in [the non-moving party's] favor, summary judgment must be granted to the moving party." *Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999) (alteration in original) (citations omitted) (internal quotation marks omitted). "Evidence which is merely colorable, conclusory, speculative or not significantly probative is insufficient to withstand a summary judgment motion." *Id.* (internal quotation marks omitted).

Summary judgment may not be granted simply due to the fact that the non-moving party did not file an opposition, as the moving party must still satisfy its burden. *See Amaker*, 274 F.3d at 681. However, where no opposition is filed and the moving party has satisfied its initial burden, then a grant of summary judgment is appropriate. *See* Fed. R. Civ. P. 56(e)(2); *Amador v. Andrews*, No. 03 Civ. 0650, 2010 WL 2365855, at *2 (S.D.N.Y. June 10, 2010).

**III. Discussion**

**A. Conspiracy**

Plaintiff alleges in his SAC that on May 30, 2007, C.O. Pringles and two other correction officers "conspired and wrote a disciplinary ticket" against Plaintiff, which was voided upon investigation by a captain. Plaintiff also alleges in his SAC that on May 31, 2007, Dr. Barnes, another doctor and prison officials "conspired to deny [Plaintiff] adequate medical treatment" by

7

tailoring Plaintiff's medical report to "corroborate the incident and disciplinary reports" of the prison officials. Plaintiff's claims for conspiracy against both C.O. Pringles and Dr. Barnes fail as a matter of law.

To prove conspiracy under 42 U.S.C. § 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "Broad allegations of conspiracy are insufficient; the plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (internal quotation marks omitted). "Unsubstantiated speculation" will not defeat summary judgment as to a § 1983 conspiracy claim. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Here, Plaintiff's allegations of conspiracy are broad, conclusory and unsubstantiated. The evidence in the record is insufficient for a reasonable jury to find that Plaintiff has established the three elements required to prove conspiracy. Accordingly, Defendants' Motion for summary judgment on Plaintiff's conspiracy claims is granted.

### B.  Deliberate Indifference to Serious Medical Needs

Plaintiff makes several factual allegations in his SAC that, construed liberally, attempt to state claims against Dr. Barnes, C.O. Madan, C.O. Pringles, Dr. Guzman, and P.A. Swanzi for deliberate indifference to Plaintiff's serious medical needs. However, all of Plaintiff's claims for deliberate indifference to his serious medical needs fail as a matter of law.

To prove deliberate indifference to serious medical needs under 42 U.S.C. § 1983, a plaintiff must satisfy a two-prong test, one prong being objective and the other subjective. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).

The objective prong requires the plaintiff to demonstrate that the alleged deprivation of medical care was "sufficiently serious." *Id.* (internal quotation marks omitted). A deprivation is sufficiently serious where "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). In determining whether a deprivation is sufficiently serious, the court conducts two inquiries. *Salahuddin*, 467 F.3d at 279.

First, the Court examines whether the prisoner was actually deprived of adequate medical care. *Id.* A prisoner is not deprived of adequate medical care where prison officials act "reasonably" in response to an inmate's medical situation. *Id.* (internal quotation marks omitted). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment," or "mere disagreement over the proper treatment, does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Second, the Court inquires whether the inadequacy in medical care is sufficiently serious, specifically examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. If the inadequate medical care is a complete failure to provide treatment, courts examine "whether the inmate's medical condition is sufficiently serious." *Id.* However, "where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Id.* If "the offending conduct is an unreasonable delay or interruption in . . . treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (second alteration in original) (internal quotation marks omitted).

The subjective prong requires the plaintiff to demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Id.* Specifically, a plaintiff must prove that the official acted with "deliberate indifference," which is a state of mind "equivalent to subjective

9

recklessness." *Id.* "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* "Negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703.

### 1. Dr. Barnes

Plaintiff alleges in his SAC that on May 31, 2007, Dr. Barnes "refused to treat and examine" certain "injuries suffered" by Plaintiff in an assault by other inmates and that Dr. Barnes "deliberately minimized" Plaintiff's injuries in his medical report. Plaintiff also alleges that Dr. Barnes should have sent Plaintiff for x-rays instead of to the dentist. However, the record does not contain sufficient evidence to permit a reasonable jury to find that Plaintiff has established Dr. Barnes' conduct amounted to a constitutional violation.

First, Plaintiff has not produced any evidence that his injuries on May 31, 2007 were sufficiently serious. Plaintiff describes his injuries primarily as swelling, bleeding and lacerations. Plaintiff does mention in his deposition that he may have sustained a broken jaw. However, the record shows that Dr. Barnes sent Plaintiff to the dentist to address the injuries to his mouth and jaw. Therefore, even if Plaintiff's jaw injury was sufficiently serious, Dr. Barnes acted reasonably in response to the situation by sending him for treatment. While Plaintiff maintains that he should have been sent for x-rays, disagreement regarding proper medical treatment does not give rise to a constitutional claim.

Second, Plaintiff has not produced any evidence that the delay in treatment was sufficiently serious. The record shows that Dr. Barnes did not immediately treat Plaintiff for his knee injuries, but that these injuries were tended to the next day.

Accordingly, Defendants' Motion for summary judgment on Plaintiff's claim for deliberate indifference to his serious medical needs against Dr. Barnes is granted.

10

### 2. C.O. Madan

Plaintiff alleges in his SAC that on July 24, 2007, C.O. Madan influenced other officers not to take Plaintiff on his medical trip because he refused to wear mechanical restraints. However, the record does not contain sufficient evidence to permit a reasonable jury to find that Plaintiff has established C.O. Madan's conduct amounted to a constitutional violation.

First, Plaintiff has not produced any evidence that his injuries on July 24, 2007 were sufficiently serious. He describes the surgery at issue as a surgery to correct "floaters" around his eyes, as well as an infection on the side of his eyes. Second, Plaintiff has not produced any evidence that the delay in treatment was sufficiently serious. The record shows that Plaintiff did obtain the eye surgery he needed after being transferred to Livingston Correction Facility on November 28, 2007.

Third, Plaintiff has not produced any evidence that C.O. Madan possessed the requisite culpable state of mind. Plaintiff concedes that he was housed with high risk inmates at the time of the medical trip at issue and that the restraints he was asked to wear were "for high risk inmates." Plaintiff also concedes that he was informed that his refusal to wear the restraints would result in his not going on the medical trip and that he was given the chance to change his mind.

Accordingly, Defendants' Motion for summary judgment on Plaintiff's claim for deliberate indifference to his serious medical needs against C.O. Madan is granted.

### 3. C.O. Pringles

Plaintiff alleges in his SAC that on August 7, 2007, C.O. Pringles "deliberately denied [Plaintiff] access to his cell to use the bathroom" even though Plaintiff was experiencing "complications from a previous surgery for urethra stricture." However, the record does not

11

contain sufficient evidence to permit a reasonable jury to find that Plaintiff has established C.O. Pringles' conduct amounted to a constitutional violation.

First, Plaintiff has not produced any evidence that his injuries on August 7, 2007 were sufficiently serious. Plaintiff does claim in his SAC that he "passed out, injuring [himself] from the fall" after he was "force[d] to hold in his urine." However, he also claims that he was then taken to the emergency clinic. Therefore, even if Plaintiff's fall was sufficiently serious, C.O. Pringles acted reasonably in response to the situation by sending him for treatment. Second, Plaintiff has not produced any evidence that the delay in treatment was sufficiently serious. Plaintiff testified that once he urinated, his pain subsided.

Accordingly, Defendants' Motion for summary judgment on Plaintiff's claim for deliberate indifference to his serious medical needs against C.O. Pringles is granted.

### 4. Dr. Guzman

Plaintiff alleges in his SAC that on November 23, 2007, Dr. Guzman prescribed Plaintiff the medication Bactrim "without ever informing [Plaintiff] that he [had] been infected with MRSA." However, the record does not contain sufficient evidence to permit a reasonable jury to find that Plaintiff has established Dr. Guzman's conduct amounted to a constitutional violation. The record shows, at most, that Dr. Guzman was negligent, which does not give rise to a constitutional claim. Moreover, Plaintiff has not produced any evidence that Dr. Guzman's actions harmed him in any way. Accordingly, Defendants' Motion for summary judgment on Plaintiff's claim for deliberate indifference to his serious medical needs against Dr. Guzman is granted.

### 5. P.A. Swanzi

Plaintiff alleges in his SAC that from August 29, 2007 through August 31, 2007, P.A. Swanzi "refused to treat" Plaintiff for a gash on his gums, as well as pain in his knees, back, and

12

right shoulder. However, the record does not contain sufficient evidence to permit a reasonable jury to find that Plaintiff has established P.A. Swanzi's conduct amounted to a constitutional violation. Plaintiff has not produced any evidence that his injuries from August 29, 2007 through August 31, 2007 were sufficiently serious. Accordingly, Defendants' Motion for summary judgment on Plaintiff's claim for deliberate indifference to his serious medical needs against P.A. Swanzi is granted.

### C. Right of Access to the Courts

Plaintiff makes several factual allegations in his SAC that, construed liberally, attempt to state claims against Ms. Jenkins and C.O. Reyes for violation of Plaintiff's right of access to the courts. However, both of Plaintiff's claims for violation of Plaintiff's right of access to the courts fail as a matter of law.

To prove violation of a plaintiff's right of access to the courts under 42 U.S.C. § 1983, a plaintiff must establish that "the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks omitted). "The constitutional right of reasonable access to the courts is not violated by [i]nterferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts." *Smith v. City of New York*, No. 03 Civ. 7576, 2005 WL 1026551, at *7 (S.D.N.Y. May 03, 2005) (alteration in original) (internal quotation marks omitted). Moreover, "if an inmate is represented by counsel, there can be no violation of his constitutional right to access to the courts as a matter of law." *Santiago v. N.Y.C. Dep't of Corr.*, No. 97 Civ. 9190, 2003 WL 1563773, at *6 n.2 (S.D.N.Y. Mar. 06, 2003) (internal quotation marks omitted).

### 1. Ms. Jenkins

Plaintiff alleges in his SAC that on August 29 through 31, 2007, Ms. Jenkins "refus[ed] to copy or notarize [Plaintiff's] motion." However, the evidence in the record is insufficient for a reasonable jury to find that Plaintiff has established Ms. Jenkins' conduct amounted to a constitutional violation. The record shows that on the dates at issue, Plaintiff was represented by counsel. Moreover, the record shows that Plaintiff believes that he was able to file his motion. Accordingly, Defendants' Motion for summary judgment on Plaintiff's claim for violation of Plaintiff's right of access to the courts against Ms. Jenkins is granted.

### 2. C.O. Reyes

Plaintiff alleges in his SAC that on October 10, 2007, C.O. Reyes "sent an unidentified officer" to bring some legal documents to Plaintiff, and these legal documents were redacted or "wiped out," in some cases with only the name of the motion visible to Plaintiff. However, the evidence in the record is insufficient for a reasonable jury to find that Plaintiff has established C.O. Reyes' conduct amounted to a constitutional violation. The record does not contain any evidence that receiving the documents in this form resulted in actual injury to Plaintiff. Additionally, the record does not contain any evidence that Officer Reyes was even involved in altering the documents or delivering them to Plaintiff. Accordingly, Defendants' Motion for summary judgment on Plaintiff's claim for violation of Plaintiff's right of access to the courts against C.O. Reyes is granted.

### D. Excessive Force

Plaintiff alleges in his SAC that on July 26, 2007, C.O. Madan "intentionally opened and shut the automatic metal cell doors on [Plaintiff's] hand." Plaintiff's claim for excessive force against C.O. Madan fails as a matter of law.

To prove excessive force under 42 U.S.C. § 1983, a plaintiff must show that the defendant had a "sufficiently culpable state of mind" and that the force was applied "maliciously and sadistically to cause harm" as opposed to "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992) (internal quotation marks omitted). Moreover, negligence is not enough to impose liability for excessive force under § 1983. *Daniels v. Williams*, 474 U.S. 327, 333-35 (1986).

Here, the record does not contain sufficient evidence to permit a reasonable jury to find that Plaintiff has shown that C.O. Madan possessed a culpable state of mind or that she acted maliciously or sadistically. Plaintiff's only evidence that C.O. Madan closed the door on his hand purposefully is his testimony about her "attitude" toward Plaintiff. The record shows, at most, that C.O. Madan was negligent. Accordingly, Defendants' Motion for summary judgment on Plaintiff's excessive force claim is granted.

### E. Supervisory Liability

Plaintiff alleges in his SAC that on October 3, 2007, October 12, 2007 and October 27, 2007, Plaintiff spoke to Warden Shaw about being denied access to the law library. Plaintiff also alleges that he had conversations with Warden Shaw about Plaintiff's concerns regarding his medical treatment. Construing these allegations liberally, Plaintiff attempts to state a claim against Warden Shaw for supervisory liability. However, this claim fails as a matter of law.

To prove supervisory liability under 42 U.S.C. § 1983, a plaintiff must establish that the defendant had "personal involvement" in a constitutional violation against the plaintiff. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (internal quotation marks omitted). The Second Circuit held:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal,

15

>failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.*

However, the United States Supreme Court clarified that a supervisor's mere "knowledge and acquiescence" cannot establish personal involvement under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "Thus, under *Iqbal*, a defendant can be liable under section 1983 only if that defendant took an action that deprived the plaintiff of his or her constitutional rights." *Joseph v. Fischer*, No. 08 Civ. 2824, 2009 WL 3321011, at *14 (S.D.N.Y. Oct. 08, 2009). "A defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right." *Id.* Moreover, mere complaints made to supervisory defendants are not enough to establish supervisory liability under § 1983. *See Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000) (plaintiff's allegations that supervisory defendants ignored his complaints were insufficient to state a claim for supervisory liability).

Here, the evidence in the record is insufficient for a reasonable jury to find that Plaintiff has established that Warden Shaw was personally involved in any constitutional violations against Plaintiff. The only evidence in the record is that Plaintiff spoke to Warden Shaw several times about his grievances. Accordingly, Defendants' Motion for summary judgment on Plaintiff's supervisory liability claim is granted.

### F. Municipal Liability

Plaintiff attempts to state a claim against the City of New York for municipal liability; however, this claim fails as a matter of law.

To prove municipal liability under 42 U.S.C. § 1983, a plaintiff must prove that "the municipality itself cause[d] the constitutional violation at issue." *Jenkins v. City of New York*, 478 F.3d 76, 93-94 (2d Cir. 2007). In other words, "a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995); *see Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). If a plaintiff is unable to establish that a municipal policy or practice was the moving force behind a constitutional violation, then the municipality cannot be held liable. *See Monell*, 436 U.S. at 694. A municipality cannot be held responsible under § 1983 based only on a theory of respondeat superior. *Id.*

Here, the record does not contain any evidence to permit a reasonable jury to find that Plaintiff has shown that his rights were violated as a result of municipal policy or practice. While Plaintiff has named the City of New York as a defendant, he has not alleged any facts to even suggest the existence of a municipal policy or practice that caused his constitutional rights to be violated. Accordingly, Defendants' Motion for summary judgment on Plaintiff's municipal liability claim is granted.

**IV.     Conclusion**

For the reasons discussed above, Defendants' Motion for summary judgment dismissing all of Plaintiff's claims against the City of New York and defendants Shaw, Madan, Pringles, Reyes, Jenkins, Barnes, Guzman and Swanzi is hereby GRANTED. Additionally, the claims against defendants Abrams, Bannister, Battles, Davis, Griswald, Henry, Ocasio and Jean are hereby dismissed without prejudice under Rule of Civil Procedure 4(m).

The Clerk of Court is directed to close the motion at docket number 109, to close this case, and to mail a copy of this Opinion and Order to the pro se Plaintiff.

Dated: January 21, 2014
       New York, New York

                                        LORNA G. SCHOFIELD
                                       UNITED STATES DISTRICT JUDGE